**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**AF GLOENCO INC.,**

|                   |                    |
|-------------------|--------------------|
| **Plaintiff,**    | **1:10-cv-1128**   |
|                   | **(GLS/RFT)**      |
| **v.**            |                    |

**USHERS MACHINE & TOOL**
**COMPANY, INC., and DON LINCOLN,**

**Defendants.**

_____

**APPEARANCES:**                    **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Fullbright, Jaworski Law Firm        JOSEPH P. ZAMMIT, ESQ.
NY Office                            TODD R. HAMBIDGE, ESQ.
666 Fifth Avenue                     TRACY J. LEIBOVITZ, ESQ.
New York, NY 10103-3198              CHARLES B. WALKER, ESQ.

**FOR THE DEFENDANTS:**
_Ushers Machine & Tool Co. Inc.,_
_Lincoln_
DuCharme, Harp Law Firm              JOHN W. CLARK, ESQ.
10 Maxwell Drive, Suite 205          CHERYL L. SOVERN, ESQ.
Clifton Park, NY 12065

**Gary L. Sharpe**
**District Court Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff AF Gloenco Inc. (Gloenco), commenced this action against

defendants Ushers Machine & Tool Company, Inc. (Ushers) and Donald

Lincoln, asserting claims of misappropriation of trade secrets, conversion,

common law unfair competition and unjust enrichment.  (Am. Compl. ¶¶ 18-

33, Dkt. No. 31.)  Ushers asserted counterclaims alleging violations of the

Sherman Act,[1] abuse of process and tortious interference with prospective

business advantage.  (Ans. ¶¶ 57-94, Dkt. No. 12.)  Pending is Gloenco's

motion to dismiss Ushers' Sherman Act and abuse of process

counterclaims pursuant to Fed. R. Civ. P. 12(b)(6).  (Dkt. No. 16.)  For the

reasons that follow, the motion is granted.

## II. Background

Plaintiff Gloenco, a Delaware corporation operated out of Newport,

New Hampshire, and defendant Ushers, a New York corporation, both

develop and sell precision forged and machined products for various

industries.  (Am. Compl. ¶¶ 1, 7, Dkt. No. 31.)  The principal customer for

both parties is General Electric.  (Ans. ¶ 66, Dkt. No. 12; Dkt. 18 at 2.)

Defendant Donald Lincoln, a former manager of a predecessor of Gloenco,

joined Ushers in 2006.  (Ans. ¶ 12, Dkt. No. 12.)  In December of 2009,

Gloenco's President Rick Thomas initiated correspondence with Lincoln to

---

[1] 15 U.S.C.A. § 2 (West 2004).

express Gloenco's desire to purchase Ushers.  (*Id.* ¶¶ 58-59.)  Ushers contends that similar correspondence continued monthly until June 2010 when Lincoln informed Rick Thomas that he was not interested in selling Ushers.  (*Id.* ¶¶ 61-62.)

Ushers alleges that because it rebuffed Gloenco's attempts at acquisition, Gloenco undertook a concerted effort to diminish Ushers' market share, damage it's relationship with General Electric and force Ushers to agree to being purchased by Gloenco.  (Ans. ¶¶ 58-94, Dkt. No. 12.)  Specifically, Ushers alleges that once Lincoln told Thomas that he was not interested in selling the firm, Thomas remarked that he could be "vindictive" and that they could pursue the sale "the hard way."  (*Id.* ¶ 63.) Ushers further contends that Gloenco has no proprietary interest in its process drawings, and its claims against Ushers are therefore "frivolous, without any merit" and a "sham."  (*Id.* ¶ 71.)  Gloenco's only goal in commencing the present litigation, Ushers argues, was to diminish Ushers' ability to compete for the business of General Electric.  (*Id.* ¶ 72.)     In an attempt to further soil Ushers' business reputation, Gloenco informed General Electric of its pending civil action against Ushers and falsely reported that Ushers employees were providing General Electric prints to

other companies.  (*Id.* ¶ 90.)  These allegations of an organized campaign

of "malicious conduct" form the basis of Ushers' counterclaims against

Gloenco for violations of the Sherman Act, abuse of process and tortious

interference with prospective business advantage.  (Ans. ¶¶ 57-94, Dkt.

No. 12.)

### III.  Standard of Review

The standard of review under Federal Rules of Civil Procedure

12(b)(6) is well established and will not be repeated here.  For a full

discussion of the standard, the court refers the parties to its previous

opinion in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218

(N.D.N.Y. 2010).

### IV.  Discussion

### A.    Attempted Monopolization[2]

In its first counterclaim, Ushers alleges that Gloenco violated Section

2 of the Sherman Act by "engag[ing] in a course of malicious conduct

designed to improperly obtain an unfair competitive advantage in the

relevant market."  (Ans. ¶ 64, Dkt. No. 12.)  Gloenco seeks to dismiss

---

[2] Despite initially arguing that Gloenco violated any or all aspects of Section 2 of the Sherman Act, Ushers narrows its theory of liability to attempted monopolization only.  (Dkt. No. 20 at 1.)  The court's analysis is accordingly narrowed.

Ushers' claim of attempted monopolization on the grounds that it is deficient as to all elements.  (Dkt. No. 22 at 3.)  The court agrees that dismissal is appropriate.

Section 2 of the Sherman Act makes it a crime for any person to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States."  15 U.S.C.A. § 2 (2004).  "To establish a claim for attempted monopolization, a plaintiff must prove: (1) that the defendant has engaged in predatory or anticompetitive conduct with (2) specific intent to monopolize and (3) a dangerous probability of achieving monopoly power."  *Tops Mkts.*, *Inc. v. Quality Mkts., Inc.,* 142 F.3d 90, 99-100 (2d Cir. 1998) (quotation marks and citation omitted).  Because it proves dispositive, the court need only addresses the dangerous probability prong.

The critical inquiry in deciding whether a dangerous probability of achieving monopoly power[3] exists is the economic power of the alleged monopolizer in the relevant market.  *Tops Mkts.*, 142 F.3d at 100.  Here, Ushers fails to adequately define the relevant market or the market power

---

[3] "Monopoly power is the power to fix prices or exclude or restrict competition in a relevant market."  *Hunter Douglas, Inc. v. Comfortex Corp.,* 44 F. Supp. 2d 145, 151 n.8 (N.D.N.Y. 1999) (citation omitted).

possessed by Gloenco.

A relevant market must be defined according to both geography and the product or service at issue. *Hunter Douglas, Inc. v. Comfortex Corp.,* 44 F. Supp. 2d 145, 151 n.9 (N.D.N.Y. 1999). "The reasonable interchangeability of use or the cross-elasticity[4] of demand between the product itself and substitutes for it determine the outer boundaries of a product market." *Chapman v. N.Y. Div. for Youth*, 546 F.3d 230, 237 (2d Cir. 2008) (internal quotation marks omitted) (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962)).

Ushers defines the relevant market in the instant case as "the business derived from General Electric Company," or more specifically "the manufactured parts derived from . . . General Electric Company." (Dkt. No. 12 at 9; Dkt. No. 20 at 6.) Ushers fails to articulate a geographic boundary for this market, and does not discuss any possible substitutes, or the lack thereof, for the products included within it. Ushers' incomplete definition of the relevant market is, in itself, grounds for granting Gloenco's motion to dismiss. *See Chapman,* 546 F.3d at 238 (holding that "[w]here the [non-

---

[4] "Cross-elasticity of demand exists if consumers would respond to a slight increase in the price of one product by switching to another product." *AD/SAT, Div. of Skylight, Inc. v. Associated Press*, 181 F.3d 216, 227 (2d Cir. 1999). (citation omitted).

moving party] fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand . . . the relevant market is legally insufficient and a motion to dismiss may be granted."); *see also Todd v. Exxon Corp.,* 275 F.3d 191, 199-200 (2d Cir. 2001) (holding that while "courts hesitate to grant motions to dismiss for failure to plead a relevant product market" because of the fact-intensive nature of the inquiry, dismissal is appropriate in cases of "(1) failed attempts to limit a product market to a single brand, franchise, institution, or comparable entity that competes with potential substitutes or (2) failure even to attempt a plausible explanation as to why a market should be limited in a particular way.").

Even if "the manufactured parts derived from . . . General Electric Company" is deemed a sufficiently pled relevant market, Ushers' failure to allege facts relating to Gloenco's market power leaves the court without any facts upon which to find a plausible claim that there is a dangerous probability of Gloenco achieving monopoly power.  A party's market power is determined by analyzing its "market share in light of other market characteristics, including barriers to entry."  *Tops Mkts.*, 142 F.3d at 100 (citation omitted).  While no definitive percentage of market control is

7

required, a party's possession of a "significant market share" may indicate the presence of a dangerous possibility of achieving monopoly power.  *H.L. Hayden Co. v. Siemens Med. Sys., Inc.,* 879 F.2d 1005, 1017 (2d Cir. 1989) (citation omitted).

Ushers does not attempt to articulate the share of "business derived from General Electric Company" possessed by either party.  Because no facts relating to Gloenco's market share or barriers to entry to the market are adduced, Ushers has failed to plead a plausible claim that there is a dangerous probability that Gloenco will achieve the ability to fix prices or exclude competition in the defined market.  Accordingly, Gloenco's motion to dismiss is granted and Ushers' Sherman Act claim is dismissed.  Should Ushers wish to do so, it may file an amended counterclaim within ten (10) days of the date of this memorandum decision-order.

**B.    Abuse of Process**

Ushers' second counterclaim alleges that Gloenco committed the tort of abuse of process by commencing a civil action against Ushers and disseminating information about that action to General Electric.  (Ans. ¶¶ 79-87, Dkt. 12.)  Gloenco seeks dismissal of Ushers' counterclaim on the grounds that both its filing of the lawsuit and its subsequent dissemination

of information to General Electric were lawful.  (Dkt. No. 17 at 13.)  The court agrees.

A valid abuse of process claim is comprised of three elements: "(1) regularly issued process, either civil or criminal, (2) an intent to do harm without excuse or justification, and (3) use of the process in a perverted manner to obtain a collateral objective." *Curiano v. Suozzi*, 63 N.Y.2d 113, 116 (1984).  In alleging that Gloenco's purpose for commencing its civil action was to diminish Ushers' business reputation, harm the firm financially and force a sale of the company to Gloenco, Ushers pled sufficient facts to satisfy the second element at this juncture.  (Ans. ¶¶ 82-85, Dkt. No. 12.)  At issue, then, are the first and third elements.

First, the process issued must involve "an unlawful interference with one's person or property." *Curiano*, 63 N.Y.2d at 114 (quoting *Williams v. Williams*, 23 N.Y.2d 592, 596 (1969)).  "[T]he institution of a civil action by summons and complaint is not legally considered process capable of being abused." *Curiano*, 63 N.Y.2d at 114.  Because the process at issue here is the filing and service of a civil summons and complaint, Gloenco's commencement alone cannot support a claim for abuse of process.

As for the improper use of process after it is issued, the Court of

Appeals of New York has made clear that dissemination of information relating to a lawsuit does not constitute an interference with "person or property." *Williams*, 23 N.Y.2d at 596.  In *Williams*, defendants filed suit against plaintiff and circulated copies of the summons and complaint amongst members of plaintiff's trade.  23 N.Y.2d at 595.  The Court of Appeals found that, despite plaintiff's contentions that the underlying suit was baseless, defendants' dissemination of information relating to the action did not constitute abuse of process.  *Id.* at 596.  Despite Ushers' arguments to the contrary, the present case is factually analogous to *Williams*, and thus, Ushers has also failed to plead a plausible abuse of process claim.  Gloenco's motion to dismiss is therefore granted and Ushers' abuse of process claim is dismissed.

## V.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Gloenco's motion to dismiss (Dkt. No. 16) is **GRANTED** and Ushers' Sherman Act and abuse of process counterclaims are **DISMISSED**; and it is further

**ORDERED** that should Ushers wish to do so, it may file an amended counterclaim within ten (10) days of the date of this memorandum decision-

10

order; and it is further

   **ORDERED** that the parties notify Magistrate Judge Treece in order to

schedule further proceedings in accordance with this order; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision

and Order to the parties.

**IT IS SO ORDERED.**

September 30, 2011
Albany, New York

Gary L. Sharpe
U.S. District Judge

11